```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
MERRILL LYNCH BUSINESS FINANCIAL
SERVICES INC.,
                                        MEMORANDUM AND ORDER
          Plaintiff,
                                        Civil Action No.
     -against-                          CV-06-3951(DGT)

HERITAGE PACKAGING CORP., RACHEL
SCHNITZLER, SOLOMON SCHNITZLER
AND "JOHN DOE #1" THROUGH "JOHN
DOE #12", the last twelve names
being fictitious and unknown to
plaintiff, being persons having
or claiming an interest in or
lien upon the Collateral
described in the complaint,

          Defendants.

--------------------------------X
```

Trager, J:

Merrill Lynch Business Financial Services, Inc. brought this motion for summary judgment, pursuant to Federal Rules of Civil Procedure 56. For the reasons set forth below, the motion is granted.

**Background**

On July 17, 2003, defendant, Heritage Packaging Corporation ("Heritage" or "defendant"), a New York Corporation with its principal place of business in Brooklyn, New York, entered into a Working Capital Management Account Agreement ("loan agreement" or

1

"WMCA Note") with plaintiff, Merrill Lynch Business Financial Services, Inc. ("Merrill" or "plaintiff"), a Delaware corporation with its principal place of business in Chicago, Illinois, whereby Merrill granted Heritage a $550,000 commercial line of credit. Compl. ¶¶ 1-2, 8; Declaration of Catherine L. Briick ("Briick Decl."), Ex. A, WCMA Note; Pl.'s Statement of Undisputed Material Facts ("Pl.'s 56.1 Statement") ¶ 1. In order to receive the loan, on July 17, 2003, Heritage's principals, Rachel and Solomon Schnitzler (collectively, "the Schnitzlers"), personally guaranteed the line of credit extended.[1] Briick Decl., Ex. B, Unconditional Guaranty by Rachel Schnitzler; Briick Decl., Ex. C, Unconditional Guaranty by Solomon Schnitzler; Pl.'s 56.1 Statement ¶ 2. Under the note, in the event of a default, Merrill could accelerate the principal, interest and other obligations immediately due and payable under the note. Briick Decl., Ex. A, WCMA Note, § 3.6, ¶ ii. Furthermore, the Schnitzlers guaranteed payment of all sums and other obligations due from Heritage to Merrill, including court costs and reasonable attorney's fees incurred in collecting the indebtedness. Briick Decl., Ex. B, Unconditional Guaranty by Rachel Schnitzler; Briick Decl., Ex. C, Unconditional Guaranty by Solomon Schnitzler.

The loan agreement initially matured on July 31, 2004, but

---

[1] The Schnitzlers also reside in Brooklyn. Compl. ¶¶ 3-4.

was later extended to a new maturity date of July 31, 2006. Briick Decl., Ex. D, Aug. 4, 2005 Letter From Merrill to Solomon Schnitzler.

On April 21, 2006, Merrill sent a "Demand Notice" to Heritage, outlining two overall deficiencies in the line of credit: (1) that the line of credit was overdrawn by $908.08 and (2) that certain financial documentation required under the loan agreement was outstanding. Briick Decl., Ex. E, Demand Notice; Pl.'s 56.1 Statement ¶ 3. Merrill demanded that Heritage deposit at least $908.08, by April 28, 2006, to cover the overdrawn balance and that Heritage provide Merrill with the necessary financial documentation by May 5, 2006. Briick Decl., Ex. E, Demand Notice; Pl.'s 56.1 Statement ¶ 3. The defendant failed to supply this information and, thus, caused an Event of Default.[2] Briick Decl., Ex. A, WCMA Note, § 3.5(c); Pl.'s 56.1 Statement ¶ 4; Briick Decl., Ex. F., Notice of Default and Demand for Payment ("Default Notice") at 1-2; Briick Decl. ¶¶ 7-8.

On or about July 26, 2006, Merrill sent a "Notice of Default and Demand for Payment" to defendant for all amounts due under the loan agreement and pursuant to the acceleration provision in the note. Briick Decl., Ex. F, Default Notice; Pl.'s 56.1

---

[2] Though plaintiff clearly states that defendant failed to submit its financial documents by the May 5th deadline imposed in the Demand Notice, it is unclear if defendant ever paid the $908.06 overdrawn balance.

Statement ¶ 5. The letter outlined the balance owed and imposed a default interest rate[3] and a five percent late fee on the outstanding balance. Briick Decl., Ex. F, Default Notice. Merrill indicated in this letter that Heritage had to comply with this payment request before August 3, 2006, otherwise it would institute legal proceedings to protect its interest. Id. at 2.

On August 9, 2006, Merrill filed a complaint against Heritage, the Schnitzlers and 12 unnamed defendants described as holding some interest or claim upon the chattel[4] defined in the loan agreement. The complaint alleged two separate causes of action: (1) money owed to Merrill from nonpayment of indebtedness and (2) replevin of the chattel as described in the loan agreement. Compl. ¶¶ 1-27.

On September 27, 2006, defendant answered Merrill's complaint and raised the following affirmative defenses: (1) the court lacked subject matter jurisdiction because of a want of complete diversity; (2) Merrill failed to mitigate damages; and

---

[3] The default interest rate can be imposed, per the loan agreement, when the loan is considered to be in default. The default rate is defined in the loan agreement as being either two points above the normal rate or the highest rate allowed by law. Briick Decl., Ex. A, WCMA Note, Art. 1.

[4] The chattel includes inventory, equipment, chattel paper, deposit accounts, etc. that belong to Heritage. Briick Decl., Ex. A, WCMA Note, Art. 1.

(3) Merrill failed to state a cause of action.[5]  See Answer.

On December 14, 2006, Merrill brought this motion pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that an entry of judgment against defendant for the amount outstanding on the loan[6] is appropriate because there is no dispute regarding the execution of the loan or the failure to comply with the terms of the loan agreement.  Pl.'s Mem. of Law in Supp. at 5; Pl.'s 56.1 Statement ¶¶ 1-6.

Heritage opposed the motion on January 15, 2007, arguing that summary judgment is inappropriate because there is a genuine issue of material fact as to the amount owed by Heritage.  Def.'s Mem. of Law in Supp. of Response ("Def.'s Mem.") at 1-5; Def.'s Response to Mot. for Summary Judgment ("Def.'s Opp.") ¶¶ 1-7; Def.'s Local 56.1 (b) Statement of Disputed Facts ("Def.'s 56.1 Statement") ¶ 7.  Specifically, defendant argues that Merrill failed to credit Heritage for "numerous payments" it made on the loan, Def.'s Mem. at 4-5, and, therefore, improperly calculated

---

[5] Heritage initially raised two additional affirmative defenses: (1) that Merrill failed to obtain personal jurisdiction and (2) the court lacked subject matter jurisdiction as a result of Merrill's failure to plead the defendant's domicile.  In a subsequent Civil Conference Minute Order in front of Magistrate Judge James Orenstein, Heritage waived these two affirmative defenses.  Briick Decl., Ex. J.

[6] Plaintiff requests an entry of judgment for the amount outstanding on the loan, which it claims was $590,923.62 as of December 1, 2006, plus accrued interest, in addition to attorney's fees and costs of collection.  Briick Decl. ¶ 11; Pl.'s 56.1 Statement ¶ 7.

5

the amount owed by Heritage, Def.'s Opp. ¶¶ 3-5, Def.'s 56.1 Statement ¶ 7. In support of this claim, Heritage submits evidence that it had made certain payments pursuant to the loan agreement that did not appear on the statement of the account provided by Merrill in the complaint and motion.[7] Affidavit of Rachel Schnitzler ("R. Schnitzler Aff.") ¶¶ 6-7; January 15, 2007 Letter from Rachel Schnitzler to Ted Mozes, Esq. Defendant further argues that documents offered in support of Merrill's summary judgment motion lack proper evidentiary foundation. Specifically, Heritage claims that: (1) the Briick declaration is not based on the personal knowledge of the declarant, as required by Federal Rule of Civil Procedure 56(e), Def.'s Opp. ¶ 6; Def.'s Mem. at 3-4; and (2) the document showing defendant's indebtedness to Merrill lacks proper evidentiary foundation, Def.'s Mem. at 3-4, Def.'s Opp. ¶ 2.

On January 29, 2007, Merrill filed a reply, laying out the evidentiary basis for the documents used in the original motion. Pl.'s Reply Mem. of Law in Supp. of its Summary Judgment Mot. ("Pl.'s Reply") at 2-4; Pl.'s Reply, Ex. A. In addition, Merrill submits documents demonstrating that the account balance

---

[7] While defendant does not specifically state the amount that it believes remains due to Merrill, in her affidavit, Rachel Schnitzler claims Heritage made various payments during the month of January 2004, totaling $259.386, which is not reflected in Merrill's WCMA Daily Balance Report ("Daily Report"). See R. Schnitzler Aff. ¶¶ 1-7; January 15, 2007 Letter from Rachel Schnitzler to Ted Mozes, Esq.

6

information is correct, that the alleged uncredited payments were indeed credited and that the account summary it submitted in support of its moving papers was not a complete itemized listing of deposits and withdrawals but merely a daily summary, netting any transactions occurring on the same day. Reply Declaration of Catherine L. Briick ("Briick Reply") ¶¶ 5-8; Pl.'s Reply, Ex. A.

## Discussion

### (1)

### Jurisdiction

As a threshold matter, the question of jurisdiction must be addressed. In its Answer, defendant raises lack of subject matter jurisdiction as an affirmative defense, alleging that Merrill destroyed complete diversity by naming the unidentified "John Does (1) - (12)" as defendants, reasoning that some of these "John Does" may reside in New York. See Answer.

This case was brought pursuant to 28 U.S.C. §1332, under which "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy . . . is between . . . citizens of different states." 28 U.S.C. § 1332(a). While the presence of fictitious defendants is not directly addressed under this statute, courts have held that their presence "'neither creates a presumption that diversity is

destroyed, nor requires Doe defendants to be named, abandoned, or dismissed' in order for a diversity-based claim to be brought in federal court under §1332." <u>Weber, Co., Inc. v. Kosack</u>, No. 96-CV-9581, 1997 WL 666246, at *2 (S.D.N.Y. Oct. 24, 1997) (quoting <u>Macheras v. Ctr. Art Galleries-Haw.</u>, 776 F. Supp. 1436, 1439 (D. Haw. 1991)).  However, "a plaintiff filing a federal action including Doe defendants 'does so at his peril,' because if a key party turns out to be nondiverse, the action will be dismissed for lack of jurisdiction."  <u>Weber</u>, 1997 WL 666246, at *3 (quoting <u>Macheras</u>, 776 F. Supp. at 1440).

Thus, the mere inclusion of John Doe defendants does not destroy complete diversity at this juncture.  However, if it is later found that one or more of the unknown defendants is domiciled such that there is not complete diversity, this court may end up lacking the proper jurisdiction to hear the claim.

**(2)**

**Admissibility of Plaintiff's Supporting Papers**

Defendant contends that certain documents plaintiff has submitted in support of its motion for summary judgment, specifically, the Briick declaration and a document attached to this declaration, are "manifestly deficient."  Def.'s Opp. ¶ 2. Defendant claims the Briick Declaration is violative of Rule 56(e) of the Federal Rules of Civil Procedure's requirement that

8

"[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). See Def.'s Opp. ¶ 6; Def.'s Mem. at 4; R. Schnitzler Aff. ¶ 9. Defendant further contends that a document attached to the Briick Declaration, presumably the WCMA Daily Balance Report ("Daily Report"),[8] is "wrong in material respects." Def.'s Opp. ¶ 2. Specifically, as to the Daily Report, defendant argues that the declaration does not explain: (1) who prepared the record; (2) whether declarant, Briick, was involved in preparing the "internal report"; (3) who is in charge of the data underlying the report; (4) whether the report is kept contemporaneously with each alleged entry; (5) whether it was prepared specifically for this transaction; (6) whether it was prepared in the context of this litigation or is routinely kept for all accounts; (7) whether Briick reviewed the information

---

[8] Although defendant does not specify exactly which document it is attacking, the Court assumes defendant is challenging as inadmissible Exhibit G to Briick's Declaration, the Daily Report. The other documents attached to Briick's Declaration are: the WMCA Note (Ex. A), Rachel and Solomon Schnitzler's Guaranties (Exs. B and C, respectively), the letter extending the line of credit (Ex. D), the Demand Notice (Ex. E), Notice of the Event of Default and Demand for Payment (Ex. F), the Complaint (Ex. H), the Answer (Ex. I) and a Civil Conference Minute Order (Ex. J). As defendant admits to the facts underlying these documents and only challenges the amount of the indebtedness calculation, defendant's inadmissibility challenge will be construed to be limited to the Daily Report.

underlying the report for accuracy; and (8) how the entries on the report are made.  Def.'s Opp. ¶¶ 2-3.  See also R. Schnitzler Aff. ¶ 1.

Documents submitted in support of a motion for summary judgment must be made on the basis of personal knowledge and may not contain inadmissible hearsay or conclusory statements.  See, e.g., Star Ins. Co. v. Hazardous Elimination Corp., No. 05-CV-4762, 2007 WL 316569, *13 (E.D.N.Y. Jan. 30, 2007) (citing Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 643 (2d Cir. 1988)) (affidavits must be made on the basis of personal knowledge); Dedyo v. Baker Eng'g N.Y., Inc., No. 96-CV-7152, 1998 WL 9376, at *4 (S.D.N.Y. Jan. 13, 1998) (documentary evidence must be properly authenticated).  The party proffering evidence has the burden of showing that the prerequisites for its admissibility are met.  Potamkin Cadillac Corp. v. B.R.I. Coverage Corp., 38 F.3d 627, 632 (2d Cir. 1994).

First, the declaration submitted by Briick in support of Merrill's motion is admissible.  In her declaration, Briick states that she makes the declaration in support of Merrill's motion for summary judgment on "personal knowledge."  Briick Decl. ¶ 1.  Defendant's unsupported allegation that the declaration was not based on personal knowledge, see, e.g., Def.'s Opp. ¶ 6; Def.'s Mem. at 3-4, is insufficient to prove otherwise.

10

Moreover, Briick may offer evidence in her declaration based on personal knowledge obtained from a review of her company's records due to her position as a Vice President at Merrill. See Koon Chun Hing Soy & Sauce Factory v. Star Mark Mgmt., Inc., No. 04-CV-2293, 2007 WL 74304, at *2 (E.D.N.Y. Jan. 8, 2007) (holding declarant's statement based on personal knowledge admissible where declarant was an officer of plaintiff and obtained his knowledge by reviewing the company's records) (citing Zakre v. Norddeutsche Landesbank Girozentrale, 396 F. Supp. 2d 483, 504 (S.D.N.Y. 2005) ("[A]n affiant may also testify as to the contents of records that [he] reviewed in [his] official capacity."); Danone Asia Pte. v. Happy Dragon Wholesale, Inc., No. 05-CV-1611, 2006 WL 845573, at *4 (E.D.N.Y. Mar. 29, 2006) (finding that affiant, "as an officer of [the plaintiff corporation]" may offer evidence based on personal observations and information obtained from a review of the company's records)).  Accordingly, since Briick stated that she relies on and uses the documents attached to her declaration as part of her employment, Briick Reply ¶ 6, she has personal knowledge of the facts contained in her declaration.  Thus, Briick's declaration is admissible and will be considered on the motion for summary judgment.

Furthermore, the Daily Report is admissible.  Presumably, defendant is objecting to the Daily Report as inadmissible

hearsay. Plaintiff argues that the Daily Report is admissible under the business records exception to the hearsay rule. "The principles governing admissibility of evidence do not change on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997); see also Koon Chun Hing, 2007 WL 74304, at *3 (finding that copies of business records that would be admissible at trial under Federal Rules of Civil Procedure Rule 56(e) may also be considered in support of a summary judgment motion). Rule 803(6) of the Federal Rules of Evidence excepts from the operation of the hearsay rule, any:

> memorandum, report, record or data compilation, in any form, of acts [or] events ... made at or near the time by, or from knowledge transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of the business activity to make the memorandum, report, record or data compilation, ... unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6).

The Federal Rules of Evidence further states that an internal business record may be admissible without "extrinsic evidence of authenticity" if the record "would be admissible under Rule 803(6) [and is] accompanied by a written declaration of its custodian or other qualified person . . . certifying that the record was made by a person with knowledge; was kept in the course of the regularly conducted activity; and was made by the regularly conducted activity as a regular practice." Fed. R.

Evid. 902(11).

In her declaration, Briick stated that the Daily Report is "an internal [Merrill] document" that is "maintained and used in the ordinary course of plaintiff's business," Briick Decl. ¶ 12, and which "was not prepared for this litigation," Briick Reply ¶ 6. Briick also stated that she relies on and uses the information contained in the Daily Report in the course of her employment in Merrill's loan work-out department. Briick Reply ¶ 6. The fact that Briick did not personally prepare the Daily Report does not render the document inadmissible. See, e.g., United States v. Steward, 433 F.3d 273, 317 (2d Cir. 2006) (quoting United States v. Williams, 205 F.3d 23, 34 (2d Cir. 2000)) ("[B]usiness records may be admitted notwithstanding the unavailability of the record's author, so long as a 'custodian or other qualified witness' testifies that the document was 'kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the [record].'"); Phoenix Assocs. III v. Stone, 60 F.3d 95, 101 (2d Cir. 1995) (stating the proffering witness need not have prepared the business record nor even have to have "personal knowledge of the actual creation of the document"). See also Koon Chun Hing, 2007 WL 74304, at *3 (where creator of documents testified that business records were used in the "ordinary course" of business by plaintiff company, court admitted

documents though the witness who testified using information obtained from the documents did not create or have knowledge of the creation of such documents). Defendant's other objections are also unavailing. Thus, the Daily Report is admissible and will be considered on the motion for summary judgment.

**(3)**

**Summary Judgment**

**a. Standard**

Summary judgment is appropriate in an action on a promissory note upon a showing that there is "'no material question concerning execution and default'" of the note in question. Mulholland v. GMZ Assocs., Ltd., No. 02-CV-8678, 2004 WL 489062, at *1 (S.D.N.Y. Mar. 11, 2004) (quoting Royal Bank of Can. v. Mahrle, 818 F. Supp. 60, 62 (S.D.N.Y. 1993). See also Bankers Trust Co. v. F.D. Rich & Co., No. 90 Civ. 4827, 1991 WL 221091, at *2 (S.D.N.Y. Oct. 16, 1991) ("Under New York law, summary judgment is proper when plaintiff establishes proof of a note and a defendant's failure to make payment according to its terms."); Hanam, B.V. v. Kittay, 589 F. Supp. 1042, 1046 (S.D.N.Y. 1984) (summary judgment appropriate where there is no issue of execution or nonpayment) (citations omitted).

Furthermore, in an action on a guaranty, a prima facie case is established by proof of the instrument sued upon and a failure

to pay. See, e.g., West RM v. Lumbermens Mut. Cas. Co., 314 F. Supp. 2d 229, 232 (S.D.N.Y. 2004) (In cases involving guaranties, "an obligee establishes its prima facie case by demonstrating the execution of the obligation at issue, the underlying agreement, and the defendant's failure to pay"); Bank Leumi Trust Co. v. Meagher, No. 93-CV-7351, 1994 WL 455106, at *1 (S.D.N.Y. Aug. 23, 1994) (prima facie case on guaranty established by showing principal defaulted, defendant guaranteed debt, and amount owed not paid); Banner Indus., Inc. v. Key B.H. Assoc., L.P., 170 A.D.2d 246, 246, 565 N.Y.S.2d 456, 456 (1st Dep't 1991) (same).

**b. Analysis**

In this case, it is undisputed that defendant entered into a loan agreement with Merrill for $550,000 on July 17, 2003 and that the Schnitzlers each executed a personal guaranty and subsequently defaulted on their obligations to provide financial information and to make regular payments. See Pl.'s 56.1 Statement ¶¶ 1-6; Def.'s 56.1 Statement; September 17, 2007 Fax from Ted Mozes, Esq. Defendant does not dispute its receipt of a demand notice in April 2006 requesting submission of the overdue financial documentation and payment of the overdraft on the line. Pl.'s 56.1 Statement ¶¶ 1-6; Def.'s 56.1 Statement; September 17, 2007 Fax from Ted Mozes, Esq. Nor does defendant dispute that it failed to comply with plaintiff's requests, which caused an event

of default and the acceleration of the entire debt for which the Schnitzlers assumed full responsibility, as clearly delineated in the note and guaranties.  Pl.'s 56.1 Statement ¶ 4; Briick Decl., Exs. A-C; Def.'s 56.1 Statement; September 17, 2007 Fax from Ted Mozes, Esq.  Thus, plaintiff has established its entitlement to summary judgment.

Instead of attempting to raise a material issue of fact regarding the execution and default of the note, defendant focuses its challenge to plaintiff's summary judgment motion on the amount outstanding on the loan, claiming that "[p]laintiff has not demonstrated that the amounts claimed to be owing are outstanding with any certainty."  Def.'s Opp. ¶ 2.  See also Def.'s Mem. at 4-5; R. Schnitzler Aff. ¶ 8.  Although the amount still outstanding is in dispute, it is not a material fact pertaining to the defendant's liability on the note.  See Fed. R. Civ. P. 56(c) ("summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages").  See also Mfrs. Hanover Trust Co. v. Yanakas, No. 90-CV-5815, 1992 WL 196789, at *1 (S.D.N.Y. July 31, 1992), vacated on other grounds by Mfrs. Hanover Trust Co. v. Yanakas, 7 F.3d 310, 318 (2d Cir. 1993) (granting summary judgment where a defendant guarantor defaulted on a guarantee of all debts and admitted all allegations of liability but challenged the amount owed to plaintiff, stating

that "the amount due and owing is not a material fact mandating denial of summary judgment"). See also Desco Shoe Corp. v. Naturalizer of Pittsburgh, Inc., No. 84-CV-6053, 1986 WL 11448, at *2 (S.D.N.Y. Oct. 9, 1986) (granting summary judgment on liability on promissory note where "[t]here is no issue of fact, material or otherwise, for a jury to decide in connection with the defendants' liability on these notes" but directing parties to appear at a hearing to determine the "precise amount defendants owe on this account").

As defendant admits that it executed and defaulted on its loan, there is no material issue of fact as to either execution or default of the note. Furthermore, as the Schnitzlers admit they guaranteed the loan from Merrill to Heritage and that Heritage failed to pay the loan, there is no material issue of fact as to their liability. See Bank Leumi, 1994 WL 455106, at *1 (finding both defendants liable for the default and debt of Modern Album, Inc. where each defendant personally guaranteed and assumed 100 percent of Modern Album's liabilities to Bank Leumi); United Mizrahi Bank Ltd. v. Sullivan, No. 97-CV-9282, 1998 WL 575137, at *8 (S.D.N.Y. Sept. 9, 1998) (where defendant, in his individual capacity, personally guaranteed payment of a corporation's debt, court held defendant liable for the corporation's subsequent default of its loan). Thus, plaintiff is entitled to summary judgment on its claim against Heritage and

the Schnitzlers on the issue of liability.

Although the dispute over the amount owed does not preclude summary judgment on the issue of liability, it does preclude summary judgment on the issue of damages. Accordingly, the issue of damages is referred to Magistrate Judge James Orenstein for a report and recommendation.

**Conclusion**

For the foregoing reasons, summary judgment is granted in favor of plaintiff on its claim against Heritage and the Schnitzlers on the issue of liability. The issue of damages is respectfully referred to Magistrate Judge James Orenstein for a report and recommendation.

Dated:   Brooklyn, New York
         September 25, 2007

SO ORDERED:

_____/s/_____
David G. Trager
United States District Judge